# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRYL ARTHUR BELL, | : |
| Petitioner | : CIVIL ACTION NO. 3:15-1842 |
| v | : |
| | (JUDGE MANNION) |
| PA BD. OF PROBATION AND PAROLE, *et al.*, | : |
| | : |
| Respondents | : |
| | : |

## MEMORANDUM

Darryl Arthur Bell, an inmate formerly confined in the Pennsylvania Department of Corrections,[1] filed this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. (Doc. 1). Bell challenges his classification as a Tier III sex offender under Pennsylvania's Sex Offender Registration and Notification Act ("SORNA"). 42 Pa.C.S. §§9799.10, *et seq*.

By Memorandum and Order dated June 14, 2017, the Court denied Bell's petition for writ of habeas corpus, finding that Bell's 1990 Rape conviction and sentence, is listed under SORNA as one of the Tier III sexual offenses that require him to register as a sex offender for a lifetime and

---

[1]Petitioner has been released from the Pennsylvania Department of Corrections, and currently resides in North Carolina. See (Doc. 23).

appear in person quarterly at an approved registration site to verify the information provided to the PSP and to be photographed. (Docs. 13, 14).

On June 29, 2017, Bell filed a notice of appeal. (Doc. 16). By Order dated June 5, 2018, the United States Court of Appeals for the Third Circuit vacated the District Court's Order, stating the following:

> Darryl Bell appeals an order of the District Court denying his petition for a writ of habeas corpus under 28 U.S.C. §2254. Before the District Court, Bell sought relief based on a constitutional challenge to the retroactive application of Pennsylvania's Sex Offender Registration and Notification Act (SORNA). The District Court denied the petition, applying deference under 28 U.S.C. §2254(d) to a decision from the Pennsylvania Commonwealth Court. After Bell filed his notice of appeal, the Pennsylvania Supreme Court held that Pennsylvania's SORNA violated the federal Ex Post Facto Clause. Commonwealth v. Muniz, 164 A.3d 1189, 1218 (Pa. 2017). We granted a certificate of appealability and asked the parties to show cause why the District Court's decision should not be summarily vacated and the case remanded to the District Court in light of Muniz. See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6. After receiving the show-cause responses from the parties, we conclude that these arguments are best considered for the first time before the District Court. Thus, we vacate the District Court's order and remand to the District Court in light of Muniz and any additional arguments the parties wish to raise. We express no opinion on the procedural or substantive issues raised by Bell's effort to obtain habeas relief.

(Doc. 21).

By Order dated November 5, 2018, the District Court ordered supplemental briefing from the parties, on the impact, if any, Muniz has on

Petitioner's claim for relief. The petition is now ripe for disposition. For the reasons that follow, the petition will be dismissed for Petitioner's failure to exhaust state court remedies with respect to the newly enacted SORNA II.

**I. Background**

In 1960, Petitioner, Darryl Arthur Bell, committed the crime of murder after he shot and killed Philadelphia grocery store owner Herman Rosenberg. (Doc. 7-1 at 16, Bell's December 24, 2013 deposition testimony; Doc. 7-1 at 48, 52, Philadelphia Police Department Offense Report dated December 22, 1960). Bell was subsequently sentenced to death for this crime. (Doc. 7-1 at 17). Bell was also implicated in the murder of Philadelphia grocer Max Kanal, and subsequently sentenced to death in the electric chair for this crime. Id. Bell's death sentence was overturned and converted to a life sentence after the U.S. Supreme Court's decision in Furman v. Georgia, 408 U.S. 238 (1972).

In December of 1975, the Pennsylvania Board of Pardons recommended that Bell's Life sentence be commuted to a term of imprisonment of 16 years to Life. (Doc. 7-1 at 57, Board of Pardons Recommendation).

On June 15, 1976, Governor Milton Shapp commuted Bell's sentence from Life to sixteen (16) years to Life, and eligibility for parole and pre-release consideration. (Doc. 7-1 at 59, Governor's commutation Order).

On February 24, 1978, the Board released Bell on parole to an approved home plan. (Doc. 7-2 at 2, Order to Release on Parole).

In or around 1986, Bell was charged with Rape of his 17-year-old stepdaughter. (Doc. 7-2 at 5, Pennsylvania Department of Corrections Public Safety Face Sheet dated January 27, 1999). Bell was subsequently convicted of the crime of Rape and, on August 7, 1990, was sentenced to a term of imprisonment of eight (8) to twenty (20) years of incarceration. (Doc. 7-2 at 7, Pennsylvania Department of Corrections Sentence Status Summary Sheet). Bell's minimum sentence date on this new sentence was calculated as May 30, 2001 and his maximum sentence date was calculated as May 30, 2013. Id.

By a decision mailed February 14, 1991, the Board recommitted Bell as a convicted parole violator for committing the new crime of rape while on parole and ordered him to serve forty-eight (48) months backtime. (Doc. 7-2 at 11, Board's recommitment decision). The decision mailed February 14, 1991, also provided that Bell would be reparoled on or after December 19,

1994 to his eight (8) to twenty (20) year detainer sentence. Id. Consequently, on December 19, 1994, Bell was constructively reparoled from his Life sentence for Murder in the First Degree to his eight (8) to twenty (20) year Rape sentence, which had a minimum date of May 30, 2001 and a maximum date of May 30, 2013. (Doc. 7-2 at 13, Order to Release on Parole/Reparole).

On March 6, 2013, the Board requested that the State of North Carolina supervise Bell once he maxed out on his Rape conviction, as Bell's sister agreed to allow him to live with her in Wilmington, North Carolina. (Doc. 7-2 at 15, Board's Interstate Compact Transfer Request).

On April 3, 2013, Bell filed a petition for writ of mandamus with the Pennsylvania Commonwealth Court challenging his classification as a Tier III sex offender under SORNA. 42 Pa.C.S. §9799.10, *et. seq*. (Doc. 7-3 at 2, petition).

On April 4, 2013, the State of North Carolina approved the Board's request to transfer supervision to their state. (Doc. 7-2 at 20, Reply to Transfer Request).

On April 17, 2013, Bell was registered as a Tier III sexually violent offender in conformity with Pennsylvania's SORNA, as a result of his 1990 Rape conviction. 42 Pa.C.S. §§9799.13(2); 9799.14(d). (Doc. 7-2 at 24, Sex

Offender Acknowledgment of Registration Requirements Form; Doc. 7-2 at 26, Pennsylvania State Police's Sex Offender Registration Form dated April 17, 2013). Also on April 17, 2013, Bell signed the Pennsylvania Board of Probation and Parole's standard special conditions for sex offenders. (Doc. 7-2 at 29, Board's Special Conditions for Sex Offenders). The Board conditions signed by Bell do not specifically require him to register as a sex offender under Pennsylvania's SORNA Law, as this duty is required by his conviction and the operation of law. See Id. Additionally, on April 17, 2013, Bell also signed the regular and special conditions of parole for the State of North Carolina. (Doc. 7-2 at 35, North Carolina's Regular Conditions of Probation). The State of North Carolina's sex offender control conditions require that Bell register as a sexual offender in the State of North Carolina. See Id.

On May 29, 2013, Bell signed the regular conditions of his parole prior to him maxing out on his 8 to 20 year Rape sentence. (Doc. 7-2 at 39, Conditions Governing Parole/Reparole).

On May 30, 2013, the Board informed the State of North Carolina that Bell was traveling to their state via airplane. (Doc. 7-2 at 41, Interstate Compact's Notice of Departure). On June 18, 2013, the State of North

6

Carolina informed the Board that Bell had arrived in North Carolina. (Doc. 7-2 at 43, Interstate Compact's Notice of Arrival).

On July 24, 2014, the Commonwealth Court of Pennsylvania issued an opinion and order granting the Board's application for summary relief and dismissing Bell's April 3, 2013 petition for writ of mandamus. (Doc. 7-3 at 67-76, Opinion and Order).

On August 4, 2014, Bell filed a notice of appeal with the Pennsylvania Supreme Court. (Doc. 7-3 at 78, Appeal). By Order dated April 27, 2015, the Pennsylvania Supreme Court issued an order affirming the Commonwealth Court's decision. (Doc. 7-3 at 120, Order).

On September 22, 2015, Petitioner filed the instant petition for writ of habeas corpus, in which he states that "the question in this case is whether a state prisoner (who filed Mandamus Action in Commonwealth Court, April 2013, alleging that Pennsylvania's sex offender registration and notification act - better knows as SORNA - does not apply to "pre-act" offenders) who is later paroled, is "in custody" within the meaning of 28 U.S.C. 2241." (Doc. 1-2 at 1, Addendum to Habeas Corpus).

## II. Discussion

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions act as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, 565 U.S. 34, 43 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard ... which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted). The burden is on Bell to prove entitlement to the writ. Id.

A decision is "contrary to" federal law if "the state court applies a rule

that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner. Renico v. Lett, 559 U.S. 766, 773 (2010). A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Congress enacted SORNA as Title I of the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248, §§ 101–155, 120 Stat. 587, 590–611 (2006). As set forth in the statute's declaration of purpose, Congress enacted SORNA "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. §16901. SORNA "reflects Congress' awareness that pre-Act registration law consisted of a patchwork of federal and 50 individual state registration systems." Reynolds

v. United States, 565 U.S. 432, 435 (2012). Thus, "[t]he SORNA reforms are generally designed to strengthen and increase the effectiveness of sex offender registration and notification for the protection of the public, and to eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations." The National Guidelines for Sex Offender Registration and Notification, 72 Fed.Reg. 30210–01, 30210 (May 30, 2007).

SORNA specifies that all sex offenders "shall register, and keep the registration current," in each state where the offender lives, works, or attends school. 42 U.S.C. §16913(a). Within three (3) business days of an offender's change of name, residence, employment, or student status, the offender is required to appear in person in at least one (1) jurisdiction where the offender lives, works, or is a student to notify that jurisdiction of the change in registration information. 42 U.S.C. §16913(c). SORNA requires that the jurisdiction receiving this information immediately provide it to all other jurisdictions in which the offender is required to register in order to achieve a comprehensive national registry. Id.

SORNA makes it a federal crime for any person who is required to

register, and who travels in interstate or foreign commerce, to knowingly fail to register or to update registration. 18 U.S.C. §2250(a). Once a sex offender is subject to SORNA's registration requirements, that offender can be convicted under §2250 if he thereafter engages in interstate or foreign travel and then fails to register. See Carr v. United States, 560 U.S. 438, 447 (2010).

The statute defines "sex offender" to include individuals who were convicted of sex offenses prior to the enactment of SORNA. 42 U.S.C. §16911(1) (defining "sex offender" as "an individual who was convicted of a sex offense"); see also Reynolds, 565 U.S. 434 (noting that SORNA "defines the term 'sex offender' as including these pre-Act offenders"). However, SORNA does not set forth the registration procedures for pre-SORNA sex offenders. Instead, in 42 U.S.C. §16913(d), Congress delegated to the United States Attorney General the authority to determine whether SORNA's registration requirements would apply retroactively to pre-SORNA sex offenders. Section 16913(d) provides:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders....

11

42 U.S.C. §16913(d).

On February 28, 2007, pursuant to the authority delegated to it by §16913(d), the Attorney General issued an immediately effective rule establishing that "[t]he requirements [of SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of the Act." Applicability of the Sex Offender Registration and Notification Act, 72 Fed.Reg. 8894–01, 8897 (Feb. 28, 2007) (codified at 28 C.F.R. §72.3). The Attorney General subsequently issued proposed guidelines for the interpretation and implementation of SORNA on May 30, 2007, reiterating that SORNA's registration requirements apply retroactively to pre-SORNA offenders. See The National Guidelines for Sex Offender Registration and Notification, 72 Fed.Reg. 30210–01, 30212 (May 30, 2007). Additional rules, repeating that SORNA's registration requirements apply to pre-SORNA sex offenders, were promulgated on July 2, 2008. See The National Guidelines for Sex Offender Registration and Notification, 73 Fed.Reg. 38030–01, 38035–36 (July 2, 2008). The Attorney General subsequently issued a Final Rule, which became effective as of January 28, 2011. See Applicability of the Sex Offender Registration and Notification Act, 75 Fed.Reg. 81849–01 (Dec. 29, 2010).

On December 20, 2011, after being passed by the General Assembly as Act 111 of 2011, Governor Corbett signed into law Pennsylvania's SORNA, Act 111 provides for the expiration of the prior registration requirements (commonly referred to as Megan's Law, 42 Pa.C.S. §§9791-99.9), as of December 20, 2012, and for the provisions of SORNA to be effective on the same date. See In re J.B., 630 Pa. 408, 107 A.3d 1, 16 (2014).

SORNA provides that an individual convicted of the crime of Rape shall be registered for life as a Tier III sex offender, to appear in person quarterly at an approved registration site to verify the information provided to the Pennsylvania State Police, and to be photographed. 42 Pa.C.S. §§9799.14(d)(2), 9799.15(a)(3). SORNA also provides that it is applicable to individuals "who, on or after the effective date of this section [December 20, 2012,] is, as a result of a conviction for a sexually violent offense, an inmate in a State or county correctional institution of this Commonwealth …." 42 Pa.C.S. §9799.13(2).

The Pennsylvania Supreme Court's decision in Commonwealth v. Muniz, 164 A.3d 1189, 1218 (Pa. 2017), held for the first time that the registration provisions under SORNA, were punitive rather than civil in nature. As such, SORNA's criminal provisions could not be applied retroactively to

individuals without violating the Ex Post Facto Clause of the United States Constitution. Muniz, 164 A.3d 1223.

In response to the Supreme Court's decision in Muniz, the General Assembly replaced SORNA first with Act 10 of 2018 (effective February 21, 2018) and then subsequently with Act 29 of 2018 (effective June 12, 2018). This new replacement legislation, or SORNA II, 42 Pa.C.S. §§9799.10-9799.75, was specifically declared by the General Assembly to be designed to address the Pennsylvania's Supreme Court's decision in Muniz. See 42 Pa.C.S. §§9799.11(b)(4), 9799.51(b)(4). SORNA II addressed the Muniz issue by essentially creating two registries contained in Subchapters H and I of SORNA II. Subchapter H, which essentially, contains the same requirements as the original SORNA, applies only to individuals who committed a registerable offense on or after December 20, 2012. 42 Pa.C.S. §9799.12. Subchapter I[2], which contains less onerous and presumably non-

---

[2]Subchapter I of the Act provides that "[n]othing in this subchapter shall be construed to relieve an individual from the obligation to register with the Pennsylvania State Police under Subchapter I if the individual ... was required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth that was enacted before December 20,

14

punitive provisions as they follow the structure of Pennsylvania's former Megan's Law which had previously been found to be civil in nature, applies retroactively to individuals convicted on or after April 22, 1996 but before December 20, 2012 of a registerable offense, but also to individuals who were required to register under a former sex offender registration law on or after April 22, 1996 but before December 20, 2012 whose period of registration has not expired. 42 Pa.C.S. §9799.55(b)(2)(I)(B).

In addressing the Third Circuit's remand as to the impact Muniz has had on the Board's application of SORNA to Petitioner, this Court finds that because Muniz declared SORNA's statutory provisions unconstitutionally punitive, Bell's challenge to SORNA's retroactive application to him is now moot, as SORNA II's replacement language is now the applicable provision triggering any registration requirements pursuant to Act 29 of 2018.

Bell, who was convicted of the crime of Rape in 1990, is subject to SORNA II because he committed a lifetime registerable offense for which he was required to register under Pennsylvania's former sex offender law

---

2012, or would have been required to register with the Pennsylvania State Police under Act 152 of 2004." 42 Pa.C.S. §9799.75(A)(2).

(Megan's Law II[3]) due to his conviction.

However, any type of constitutional challenge to this new state law must first be made in the Pennsylvania state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) (finding that pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas review). Bell has available to him a petition for review in the Pennsylvania Commonwealth Court.

### III.  **Certificate of Appealability**.

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the

---

[3]Act 10 of 2000, or "Megan's Law II" provided that it "shall apply to individuals incarcerated or convicted on or after the effective date of this act." 42 Pa.C.S. §9799.7 (expired) (effective May 10, 2000). Bell was incarcerated on his Rape conviction on May 10, 2000. Rape was a lifetime registerable offense under Megan's Law II. 42 Pa.C.S. §9795.1(b)(2).

16

denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, reasonable jurists could not disagree that the instant petition is time-barred. It is statutorily barred, and neither statutory nor equitable tolling apply to the petition.

## IV. Conclusion

In light of the foregoing, the petition for writ of habeas corpus will be **DISMISSED**, and the case will be **CLOSED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: November 4, 2019**
15-1842-01